UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAWN M. HAWKS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CV-532- CAN |
| | ) | |
| FOREST RIVER, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION AND ORDER**

On June 13, 2008, Plaintiffs Dawn Hawks ("Hawks") and Cindy Tigler ("Tigler"), both females, complained to their supervisor that they were being paid less than their male coworkers. On June 20, 2008, as part of a reduction in force, they were terminated. While Plaintiffs argue that they were paid less and discharged because of discriminatory and retaliatory reasons, the undisputed facts show a different and non-discriminatory reason for their disparate pay and subsequent termination. The Court is also struck by the lack of evidence that Hawks and Tigler have produced to support their claims that they were victims of gender based discrimination. Summary judgment is the time to "put or shut up." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005). The Court concludes that Hawks and Tigler have failed to present sufficient evidence upon which a jury could reasonably find that Forest River acted improperly in paying Plaintiffs or in terminating them. Because of these circumstances, the Court **GRANTS** Forest River's motion for summary judgment.

**I.    PROCEDURE**

On November 13, 2009, Hawks and Tigler filed a complaint in this Court against Forest River for violations of the Equal Pay Act, 29 U.S.C. §206(d)(1), and Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.*, for unequal pay and discrimination based on gender, as well as for retaliatory discharge.

On May 2, 2011, Defendant, Forest River, Inc., filed a motion for summary judgment. On June 30, 2011, Plaintiffs, Dawn M. Hawks and Cindy Tigler filed a response in opposition. On July 15, 2011, Forest River Inc. filed a reply. On August 12, 2011, Plaintiffs filed a sur-response in opposition to Forest River's motion for summary judgment. On October 31, 2011, the Court heard oral argument on Forest River's motion for summary judgment.

This Court may now enter its ruling on Forest River Inc.'s motions pursuant to the parties' consent and 28 U.S.C. § 636(c).

## II. FACTS

The material facts are not in dispute. Where facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

In 1997, Forest River hired Hawks and Tigler as production employees in the Dash Department. During their employment, Hawks and Tigler assembled frames for dashboards, dash pods, frames for overheads and posts, and covered those frames in vinyl. Doc. No. 33-2 at 4-6. This work was considered "off-line" because it occurred before final assembly of the motor homes that Forest River produced on its production line and took place in a separate area known as the mezzanine. Although, Hawks and Tigler occasionally took on additional tasks as the need arose, the majority of their work occurred off-line, with their main responsibility being to assemble parts which were later installed in the motor homes by other employees. As off-line employees, Hawks and Tigler worked at their own pace. Because they completed their work

quickly, Hawks and Tigler left work three or four hours before their coworkers each day. Doc. No. 30-3 at 10.

In contrast, the other employees in the production department were "on-line" employees, who did the majority of their work assembling individual parts into a finished motor home. The on-line employees, who worked on the production floor, moved in and out of motor homes, carrying and installing the vinyl parts and appliances, as well as wiring lights and command centers. On-line employees relied on the productivity of other employees. Work on a motor home did not begin until previous departments completed their work. Therefore, on-line employees could not leave until all other employees in the department completed their collective work. Doc. No. 33-2 at 22-23, 25.

In November 2005, Forest River merged Hawks and Tigler with the Appliance Set Department. After the merger, they were considered piece-rate employees, who were compensated based on the number of parts they assembled during a pay period. Doc. No. 30-4 at 18-20. For each department and each pay period, Forest River established a "piece-rate pool" or "group pool," which represented the collective value of the units produced by that department. To determine the pool, Forest River assigned a monetary value to each unit and multiplied that value by the number of units produced, then divided the pool among the piece-rate employees according to the number of units and scope of work performed. Doc. No. 30-4 at 55.

From November of 2005 until April 2007, Forest River evenly divided the compensation pool among all piece-rate employees, on-line and off-line, including Hawks and Tigler. Thus, for nearly eighteen months, Hawks and Tigler were paid the same as the other employees in the Appliance Set Department. In April of 2007, Hawks and Tigler were taken out of the Appliance

3

Set Group employee pool and a different piece rate was established for them, resulting in a $300-$600 difference in weekly pay. Doc. No. 30-4 at 36. From late April 2007 until their eventual layoff in June 2008, Plaintiffs worked an average of 24 hours per week, while online employees averaged around 40 hours per week. Doc. No. 30-8 at 3-11. Hawks and Tigler received less pay per week as a result.

In early 2008, production rates at Forest River, and in the industry generally, declined. Seeing the trend, the plant manager began preparing for a layoff by reviewing hours and wages for various employees. He noticed that Hawks and Tigler were working fewer hours over an extended time and were receiving substantially less in their weekly wages.

Hawks and Tigler also noticed they were making less money than other employees. On June 13 2008, Hawks had a conversation with the plant manager, in which she stated that she was aware that the men on the floor were making more money than she and Tigler. Doc. No. 33-2 at 15. The plant manager responded that he knew this decision would "bite us in the behind." Doc. No. 33-5 at 10. He arranged a meeting the same day with Hawks and Tigler, as well as a group leader and a foreman. At the meeting, the Plaintiffs agreed to receive additional training[1], assume additional on-line duties, and to work the same hours as the on-line employees. Doc. No. 43 at 22. In return, Hawks and Tigler would receive an equal portion of the group pool to reflect their additional contribution.

During the week of June 16, 2008, Hawks and Tigler's group leader was asked to prepare

---

[1] Although the discussion of training is unclear in the parties' depositions, at oral argument Forest River asserted that Hawks and Tigler agreed to further training during the June 13 meeting. Plaintiffs' counsel admitted at oral argument that at the June 13 meeting, Plaintiffs agreed to be cross-trained for jobs that they had not yet performed. Doc. No. 43 at 23. As a result, the Court has taken Forest River's assertion that Plaintiffs agreed to training to be an undisputed fact.

a list of employees to lay off. He selected two men and Tigler. Tigler was selected because she was not as productive as Hawks. Doc. Nos. 30-2 at 42; 30-3 at 23. The group leader wanted to keep Hawks, but on or about June 17, 2008, Hawks approached her foreman with some complaints. After this conversation, the foreman added Hawks' name to the layoff list. Doc. No. 30-5 at 12-13. On June 20, 2008, Hawks and Tigler were discharged.

### III.　ANALYSIS

#### A.　Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing Bank of Ariz. v. Cities Servs. Co.*, 391 U.S.

5

253, 289 (1968)).

### B. Equal Pay Act, 29 USC § 206(d)

In order to establish a *prima facie* case under the Equal Pay Act, the Plaintiffs must show that (1) different wages were paid to employees of the opposite sex, (2) the employees of the opposite sex do equal work requiring equal skill, effort, and responsibility, and (3) the employees of the opposite sex have similar working conditions. *Wollenburg v. Cortech Mfg.,* Co., 201 F.3d 973, 975 (7th Cir. 2000). Even if a man and a woman are doing the same work for different pay, there is no violation if the wage difference stems from a factor other than gender. *Lindale v. Tokheim Corp.*, 145 F.3d 953, 957 (7th Cir. 1998). "The proper domain of the Equal Pay Act consists of standardized jobs in which a man is paid significantly more than a woman (or anything more, if the jobs truly are identical) and there are no skill differences." *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768,771-72 (7th Cir. 2007).

#### 1. Hawks and Tigler were paid less than male coworkers.

There is no dispute that the Plaintiffs were paid less than male employees in the Appliance Set Group. The record shows that from late April of 2007 to June of 2008, Hawks and Tigler were paid less per week than male employees in the Appliance Set Group. Doc. No 30-8 at 5-11. As a result, this factor has been satisfied.

#### 2. Hawks and Tigler performed work that required different skill, effort, and responsibilities.

To determine if the Plaintiffs' work required equal skill, effort, and responsibility, the court must compare Plaintiffs' jobs with those of the Appliance Set Group. The crucial issue is whether the jobs have a "common core" of tasks. *Fallon v. State of Illinois,* 882 F.2d 1206, 1209 (7th Cir. 1988), see also *Mayden v. Superior Ambulance Service, Inc.*, 647 F.Supp.2d 1014, 1019

(N.D. Ind. 2009). In assessing whether two jobs require equal skill, effort, and responsibility, the Court looks to duties actually performed by each employee, and to his or her job description or title. *Dey v. Colt Constr. & Development Co.*, 28 F.3d 1446, 1461 (7th Cir. 1994).

Plaintiffs argue that their job duties were equal to the male employees in the Appliance Set Group because both online and offline employees performed assembly work. Plaintiffs also argue that although they worked different hours, they did not take breaks or lunch, while online employees had frequent periods of down time. Plaintiffs, however, overlook some critical undisputed facts.

The Court concludes that Hawks and Tigler's jobs were quite different from the jobs of their coworkers in key aspects. First, Hawks and Tigler's jobs required different skills. They assembled component parts, like frames for dashboards, dash pods, frames for overheads and posts, and covered them in vinyl. The male on-line workers, on the other hand, installed completed component parts into a motor home, often requiring complex wiring of these components into the motor home. Furthermore, during the June 13 meeting, Hawks and Tigler agreed to receive additional training in order to perform additional on-line duties because they had not performed many online jobs. This is compelling evidence that the Plaintiffs did not have the same skills as the employees on the line. For, if they did, additional training would not be necessary.

Also, the two jobs required different types of effort. Hawks and Tigler worked at their own pace. They often left early. During one period, they worked an average of 24 hours per week. In contrast, the on-line workers worked 40 hours per week during the same period because they had to await the completion of component parts in order to install them into the final

7

product. Being paid less for working fewer hours, even if the work was similar, is not evidence of pay disparity that is gender based.

Additionally, as discussed earlier, even if men and women are doing the same work for different pay, there is no violation of the Equal Pay Act if the difference in pay stems from a factor other than gender. *Lindale*, 145 F.3d at 957. Forest River has shown that the pay disparity is attributed to reasons other than gender, such as differing skills, responsibilities, and hours worked. In contrast, the Plaintiffs have not produced any evidence, let alone sufficient evidence, for a jury to reasonably conclude that the pay disparity was gender based. On the basis of the record before the Court, the pay disparity between the Plaintiffs and the male online employees would have occurred regardless of gender. The Plaintiffs have offered no evidence that it was because of gender.

In summary, although Hawks and Tigler received different pay than their male coworkers because they performed different work, they have failed to establish a *prima facie* case. Additionally, even if their work was substantially similar to the male colleagues, because Forest River has proffered non-gender based reasons for the pay disparity such as hours worked, and the Plaintiffs have offered no evidence that the pay disparity was gender based, no reasonable jury could conclude that Forest River had violated the Equal Pay Act. *See Lindale*, 145 F.3d at 957; *Sims-Fingers*, 493 F.3d at 771-72. As a result, Forest River is entitled to a judgment as a matter of law on this claim pursuant to Fed. R. Civ. P. 56.

### C.  Title VII Sex Discrimination Claims

Under Title VII, it is unlawful for an employer to ". . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of

such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). For a Title VII claim, the plaintiff must allege that her lower pay was a result of discrimination. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 656 (7th Cir. 2010). When making a claim for discrimination under Title VII, a plaintiff may proceed under a direct method or an indirect method of proof.

### 1. Plaintiffs fail under the direct method of proof.

To establish discrimination by direct evidence, it "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 529-30 (7th Cir. 2003). Direct evidence is "evidence which if believed . . . will prove the particular fact in question without reliance on inference or presumption." *Id.* (internal citations omitted).

Here, Hawks and Tigler offer no direct evidence of sexual discrimination resulting in either the difference in pay or their termination. Absent evidence that points directly to sex as the reason for their alleged pay disparity and termination Hawks and Tigler's claim fails under the direct method.

### 2. Plaintiffs fail under the indirect method of proof.

Plaintiffs may also attempt to prove unlawful sex discrimination under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Warren v. Solo Cup Co.*, 516 F.3d 627, 630 (7th Cir. 2008). To establish a *prima facie* case of discrimination by the indirect method, the plaintiff must show that (1) she was a member of a protected class, (2) she was meeting the employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the employer treated a similarly situated man more favorably. *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 704 (7th Cir. 2003). Once the

9

plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). After the defendant satisfies its burden of production, the plaintiff must prove that the defendant's stated reasons are pretextual. *Id.*

Here, there is no dispute that as women, Hawks and Tigler belong to a protected class, or that they suffered an adverse employment action when they were paid less and eventually terminated. There is a dispute as to whether Hawks and Tigler were meeting Forest River's legitimate expectations, but because the Court finds Hawks and Tigler's case to be deficient on other grounds, the Court does not find this dispute to be material. Therefore, the Court will limit its analysis to whether Forest River treated any similarly situated man more favorably than Hawks and Tigler.

Hawks' and Tigler's most significant hurdle, and one they have not overcome, is that they have failed to show that they were similarly situated to any other male employee in the Appliance Set Group at Forest River. An employee is similarly situated if the employee is "comparable to the plaintiff in all *material* respects." *Solo Cup*, 516 F.3d at 630-31 (emphasis in original) (quoting *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846-47 (7th Cir. 2008). "In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees (1) held the same job description, (2) were subject to the same standards, (3) were subordinate to the same supervisor, and (4) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (internal quotations omitted).

Hawks and Tigler have not produced any evidence of any similarly situated employees. First, Hawks and Tigler were primarily off-line employees who assembled component parts. *See* Doc. No. 33-2 at 4-6. The male employees in the department worked on-line installing the components into the finished product. *See id.* at 22-25. As this Court discussed in the context of the Equal Pay Act, these two jobs are significantly different in material ways, including the level of skills and effort required to do the jobs. Although Hawks and Tigler were part of the same department as male on-line employees, their jobs were so different that they were not similarly situated.

Furthermore, even if they were similarly situated, Forest River has articulated a legitimate, non-discriminatory reason for Hawks and Tigler's unequal pay and eventual termination. First, Forest River stated that Hawks and Tigler were paid a different wage because they performed different work and worked different hours than the on-line employees. *See* Doc. No. 30-8 at 3-11. The undisputed facts show that Plaintiffs assembled component parts and covered them in vinyl and were piece-rate employees typically working less than 25 hours each week. *See id.*; 33-2 at 4-6. The on-line employees worked 40 hours per week installing components into motor homes and were paid for each completed motor home they produced. As previously discussed, the unequal pay was unrelated to Plaintiffs' gender. Also, when Plaintiffs were terminated, Forest River has explained their decision to terminate the Plaintiffs as being motivated by legitimate non-discriminatory reasons, specifically a reduction in work force due to declining economic factors.

For the Plaintiffs to prevail, they must now bring forward evidence upon which a jury could reasonably conclude that Forest River's reason is, in effect, a lie, or a pretext. *Atanus*, 520

11

F.3d at 672. Plaintiffs argue that the pay change that occurred in April 2007 was not prompted by a legitimate business motivation because Plaintiffs' hours had not changed from the time they were merged into the Appliance Set Group. Plaintiffs argue that if there was no change in hours, then a jury could reasonably find that the change in pay was motivated by gender discrimination.

To support their reasoning, Plaintiffs cite *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), which held that pretext can be demonstrated by circumstantial evidence, such as evidence that an employer's stated reason for an employment practice is "unworthy of credence." *Id.* at 143. In *Reeves*, the employee discredited the employer's stated reason, poor record keeping, by presenting evidence that he had properly maintained the relevant records. *Id.*

*Reeves* is not helpful to Plaintiffs because Forest River stated that the reason they were paid less was because they worked fewer hours and performed different work. Plaintiffs admitted that they worked fewer hours and performed different work than their male coworkers. There is no inconsistency or contradiction in Forest River's stated reason that would make it "unworthy of credence." *Id.* Although Plaintiffs were at one time paid the same for less work, that is insufficient to meet their burden, even under *Reeves*. As a result, Plaintiffs have failed to meet their burden, and Forest River is entitled to judgment on this claim.

### D. Title VII & FLSA Retaliation Claims

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3), states that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding . . . ." Likewise, Title VII prohibits an employer's retaliation against his

employee because she " . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e-3(a). In order to prevail on a claim of retaliation whether under the FLSA or Title VII, a plaintiff must either offer direct evidence of discrimination, or proceed under the burden-shifting method set out in *McDonnell Douglas.* 411 U.S. 792.

Whether proceeding under the direct or indirect method, the plaintiff must first show that she engaged in statutorily protected activity. *Sitar v. Ind. Dept. of Trans.*, 344 F.3d 720, 728 (7th Cir. 2003). Because this is where Plaintiffs' case for retaliation fails under both the direct and indirect method, the Court will address only that issue.

The Seventh Circuit has held that in order to have a complaint with an employer qualify as "statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class." *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 663 (7th Cir. 2006). The plaintiff must show that she actually opposed the conduct prohibited by Title VII or had a "reasonable belief" that she was opposing the prohibited conduct. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997) (holding that the plaintiff's "feeling" that her boss's conduct encompassed sexual discrimination was not enough to show she engaged in statutorily protected expression prior to her termination). A complaint may be written or oral, but it must be sufficient such that a reasonable, objective person would have understood the employee to have put the employer on notice that the employee is asserting statutory rights. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1335 (2011).

In this case there is no dispute as to what Hawks said to her supervisor on June 13, 2008.

13

In her deposition she stated that ". . . in passing, that I was aware that the guys in our group were making 3 to 400 dollars more a week than we were." Doc. No. 33-2 at 15. Forest River does not dispute this. However, Forest River does dispute whether Hawks' statement of awareness constitutes statutorily protected activity. While there is a dispute as to whether Tigler said anything at all that would constitute a complaint, Plaintiffs agree that if she said anything, it was no more explicit than what Hawks said. Doc. No. 43 at 28. Therefore, the Court will assume that Tigler's made an equivalent statement and consider whether Hawks' statement constituted statutorily protected activity.

The Supreme Court recently addressed the issue of whether an oral complaint constitutes statutorily protected activity in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325 (2011). In that case, an employee brought an action for retaliation under the FLSA after he repeatedly complained about the placement of a time clock that recorded his hours. *Id.* at 1329-30. The employee stated that the clock's placement was "illegal"; he stated that "if they were to get challenged on" the location in court, "they would lose"; he told a coworker that he was going to file a lawsuit about the placement of the time clocks; and he told a manager that the placement of the clocks was illegal and that the employer would "lose" in court. *Id.* at 1330. Although the Supreme Court only decided the issue of whether an oral complaint could support a claim for retaliation, it also considered what level of formality was required to constitute statutorily protected activity. *Id.* at 1334. The Court reasoned, ". . . the phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Id.* It continued, "To fall within the scope of the antiretaliation

provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by statute and a call for their protection." *Id.* at 1335.

Viewing this case through the criteria laid out in *Kasten*, Hawks' June 13 statement does not constitute statutorily protected activity because it was not sufficiently clear, in light of content and context, that she was asserting rights protected by statute. She did not even indicate that the difference in pay was unfair. She only stated that she was aware of a difference in pay. *See* Doc. No. 33-2 at 15. The undisputed facts show that when the meeting was held shortly after Hawks complained, the Plaintiffs did not discuss discriminatory intent or the assertion of legal rights. Rather, they discussed how Hawks and Tigler could make more money by working longer hours. *See* Doc. No. 33-2 at 16. Both women were willing to assume more duties, undergo additional training, and work longer hours, indicating that their concerns of disparate pay were addressed to their satisfaction and that those concerns had nothing to do with impermissible gender discrimination. *See* Doc. No. 30-2 at 35-36. As a result, the undisputed facts leave the Court with only one conclusion, that Hawks' June 13 statement was simply too general and unspecific to constitute statutorily protected activity.

Plaintiffs argue that their statement was sufficient because it elicited their supervisor's reaction that he knew the decision would "bite us in the behind," indicating that Forest River had notice that their actions were discriminatory. But the Court is unpersuaded for several reasons. First, the supervisor stated that he made that statement because Hawks and Tigler had made other complaints before that had resulted in personnel meetings. *See* Doc. No. 33-5 at 11. Plaintiffs have not produced any evidence to rebut this statement. Also, Forest River's statement,

15

because it is so general and unspecific, cannot reasonably constitute an admission that Forest River had engaged in impermissible gender discrimination. Also, given the content of the June 13 meeting following the "bite us in the behind" statement, no reasonable jury could find that it was such an admission.

Finally, Forest River and Plaintiffs dispute the content of Hawks' June 17, 2008 discussion with her supervisor that led to her termination. Forest River argues that Hawks stated that she would not work additional hours as agreed. *See* Doc. No. 30-5 at 12-13. Hawks contends that she never made any such statement during that discussion. *See* Doc. No. 33-2 at 27-28. At the summary judgment stage, the Court must construe any factual dispute in favor of the non-moving party, in this case Plaintiffs. Thus, assuming that Hawks did not complain about her hours, she still has not produced any evidence that she engaged in protected activity that would bring her within the protection the anti-retaliation statutes. In short, her version of the June 17 discussion is no more specific than the June 13 discussion and is also insufficient to constitute statutorily protected activity.

Because their complaint failed to give Forest River adequate notice that they were asserting statutorily protected rights, Hawks' and Tigler's statement does not constitute a statutorily protected expression. Because Plaintiffs have failed to establish that their complaint was statutorily protected, their retaliation claim fails.

### E.     Section 1981

Plaintiffs also filed a claim under 42 U.S.C. § 1981, but they have not contested Forest River's motion for summary judgment with regard to that claim. An undeveloped argument is a waived argument.  *See Kochert v. Adagen Med. Intern., Inc.*, 491 F.3d 674, 679 (7th Cir. 2007).

As a result, Hawks and Tigler have waived argument for this claim, and summary judgment is appropriate.

### III. CONCLUSION

Because Hawks and Tigler have failed to show that their offline jobs required equal skill, effort or responsibility compared to the male online employees, or that their pay disparity was gender based, their Equal Pay Act claim fails. Because they also failed to show that they were similarly situated with any other male employee who was treated more favorably, or that Forest River's reason for their discharge was pretextual, Hawks and Tigler's Title VII sex discrimination claim also fails. Because the Plaintiffs' oral statement was insufficient to give notice to Forest River, Plaintiffs have failed to show that they engaged in statutorily protected activity, and their retaliation claim fails, as well. Therefore, the Court **GRANTS** Forest River's motion for summary judgment. [Doc. No. 29].The clerk is instructed to enter judgment in favor of Forest River. In addition, the Court **DENIES AS MOOT** Forest River's motion to strike Plaintiffs' sur-response. [Doc. No. 38].

**SO ORDERED.**

Dated November 8, 2011

 S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge